Demon SHEPARD, Appellant,

v.

UNITED STATES, Appellee.

No. 86–234.

District of Columbia Court of Appeals.

Argued Oct. 15, 1987.

Decided Feb. 29, 1988.

Mary E. Davis, Washington, D.C., with whom Patrick M. Donahue was on the brief, for appellant.

David Howard Saffern, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before MACK, ROGERS, and STEADMAN, Associate Judges.

MACK, Associate Judge:

After a jury trial, appellant was convicted of malicious destruction of property in violation of D.C.Code § 22–403 (1981). While he was also charged with arson (D.C. Code § 22–401 (1981)) and possession of a molotov cocktail (D.C.Code § 22–3215a(a) (1981)), the jury found appellant not guilty on these counts of the indictment. On January 17, 1986, appellant was sentenced to serve a term of imprisonment of seven to twenty-one years. The government represented that appellant had two previous felony convictions, and prior to trial, he was served with life papers pursuant to D.C. Code § 22–104a (1981). Under this recidivist provision, appellant's sentence was enhanced beyond the ten-year maximum limit mandated by D.C.Code § 22–403.

Appellant contends that the trial court improperly excluded the testimony of his only witness, thereby denying his fundamental right to present witnesses in his own defense. Additionally, appellant argues that he was improperly sentenced pursuant to the enhanced penalty provision of D.C.Code § 22–104a. We reject the first

contention but remand for resentencing in view of procedural error flowing from the filing of an erroneous information.

### I.

On August 20, 1984, appellant, who was a former resident and employee of the Salvation Army, attempted to enter its warehouse at 526 First Street, N.W. Another employee, William Gleason, informed appellant that he could not enter the warehouse because he was no longer an employee. Mr. Gleason testified that appellant angrily left the premises.

In the early morning hours of August 22, Joseph Hopkins, a Salvation Army resident, observed from his third floor window,[1] appellant with an object in his hand standing in an alley next to the window of the Salvation Army chapel. Mr. Hopkins called out to appellant warning him not to do anything, and at that point, appellant threw the object through the window. Mr. Hopkins ran downstairs to the chapel and saw a ball of fire inside of the chapel. Shortly thereafter the authorities were called.

At a pretrial hearing, the government moved to exclude the testimony of Ms. Amy Lucille Urbin, who was the only witness that appellant intended to use in his defense at trial. Appellant's attorney made a factual proffer, in opposition to the government's motion, and presented the following testimony:

> Ms. Urbin worked at the Amoco service station located at 500 New Jersey Avenue, N.W. as a cashier on the 6:30 p.m. to 6:30 a.m. shift on August 22, 1984. During the early hours of August 22, 1984, a black man, having a small build, small features, and wearing blue jean type pants and a brown shirt with flowers on it, approached her for the purpose of purchasing a small quantity of gasoline. The man tendered a small amount of money and filled up two small plastic containers with gas. After obtaining a

small quantity of gas from the pumps, the man walked in the direction of the Salvation Army. Approximately forty-five minutes to an hour later, police officers arrived at the gas station and inquired whether Ms. Urbin had sold gas to anyone in a container. While Ms. Urbin recognized appellant in a line-up which she attended at the police's request, she stated that appellant was not the individual who purchased the gas.

The trial court found that this evidence was inadmissible to prove that someone other than appellant committed the crimes enumerated in the three-count indictment. After a jury trial, in which appellant was convicted of malicious destruction of property, this appeal followed.

### II.

This court has stated that "[t]he trial court's decision that proffered evidence is not sufficiently relevant or probative is reviewable *only for an abuse of discretion."* Beale v. United States, 465 A.2d 796, 803 (D.C.1983) (citing *Randall v. United States,* 353 A.2d 12, 14 (D.C.1976) (emphasis added)). On the record before us, it is clear that the trial court properly exercised its discretion in excluding the testimony of Ms. Urbin.

■■■ *Beale* stands for the proposition that in order for evidence to be introduced at trial that someone other than the accused committed the offense, the evidence must be probative and *clearly link* the other person to commission of the crime. *Id.* (citing *Brown v. United States,* 409 A.2d 1093, 1097 (D.C.1979)). There must be sufficient indicia that the evidence is reliable. Turning to the instant case we see no reason to question the reliability of the evidence; we can question, however, whether the evidence was probative. We cannot say that the trial court could not have reasonably concluded that the fact

---

1. While Mr. Hopkins, on cross-examination, expressed uncertainty as to whether the street lamp *illuminated* all of the alley or half of it, he consistently maintained that he recognized appellant. Another government witness, Ms. Van Sickle, testified on cross-examination by defense counsel that the alley was illuminated "much further than halfway." Construing the evidence in the light most favorable to the government, we conclude that the jury could have found that the alley was illuminated adequately for a reliable identification.

that a man, other than appellant, who bought small quantities of gas in plastic containers, was not so clearly linked to the charged arson as to be probative of appellant's defense. Certainly the conduct of this man, taken as a fact, could not have posed an inconsistency with the guilt of appellant.

We are sensitive to appellant's assertion of his constitutional right to present witnesses in his own defense. However, this right must function in harmony with the evidentiary safeguards that are integral to a fair trial. In *Brown v. United States, supra,* we noted the delicate balance that must be maintained between the fundamental right to call witnesses in one's own defense and the exclusion of evidence that threatens to undermine a fair trial:

> Of course, the accused in a criminal prosecution has a fundamental right to call witnesses in his own defense. *Chambers v. Mississippi,* 410 U.S. 284 [93 S.Ct. 1038, 35 L.Ed.2d 297] (1973); *Washington v. Texas,* 388 U.S. 14 [87 S.Ct. 1920, 18 L.Ed.2d 1019] (1967). Evidence that someone other than the accused has committed the crime for which the accused is charged may be presented through the testimony of defense witnesses *when there are sufficient indicia that the evidence is reliable. Chambers v. Mississippi, supra,* 410 U.S. at 298–303 [93 S.Ct. at 1047–1049]. One commentator has stated the rule to be: "When guilt of another person is inconsistent with guilt of the defendant, it is always relevant for the defendant to present evidence that such other person committed the crime." 1 Wharton's Criminal Evidence § 195 at 404 (13th ed. 1972). However, *before evidence* of the guilt of another can be deemed relevant and thereby admissible, *the evidence must clearly link that other person to the commission of the crime. See, e.g., State v. Perelli,* 125 Conn. 321, 5 A.2d 705 (1939); *White v. State,* 52 Nev. 235, 285 P. 503 (1930). Even when such evidence is relevant, *the trial court must weigh its probative value against its prejudicial impact.... Punch v. United States,* D.C.App., 377 A.2d 1353, 1358 (1977).

409 A.2d 1097 (emphasis added); *accord Hall v. United States,* 454 A.2d 314, 319 (D.C.1982) (where no evidence of romantic relationship other than "talking," trial court properly excluded proffered testimony intended to show that another rejected suitor had a similar motive to kill).

In the instant case, the proffered testimony did not cross the constitutional threshold of "clearly linking that other person to commission of the crime." In short, all we have is two concrete facts—a man bought gas and walked in the direction of the Salvation Army—but these facts require tremendous inferential leaps in order for us to conclude that the man who bought gas committed the arson rather than appellant. The record underscores the lack of additional facts which are essential in establishing the probative value of the proffered testimony.

> The trial court's reasoning is instructive: [W]ithout some other connection, other than the fact that someone else other than the [appellant] bought gasoline in a small quantity, I just don't see how that's probative of whether or not your client committed the offense. Conceivably, that other person may have had those two containers and got the gasoline because he—his car broke down. It's not an uncommon occurrence and he got gasoline in a small container so he could take it to his car.

The record further illustrates that appellant's attorney was unable to persuade the court that the person who bought gas could be connected to the instrumentality of the criminal offense—the molotov cocktail. The man who bought gas at the Amoco station used plastic containers while the molotov cocktail was made of glass. The trial court stated: "I just don't see it as being probative ... because ... the type of container that was used as the molotov cocktail is different than the type of container that the item was put into."

Another argument advanced by appellant was that because the man walked in the direction of the Salvation Army, a clear link was established between the other per-

son and the crime. Again, the trial court rejected this proffer noting:

> [W]e don't know in which direction that person went except for the fact that they walked in the general—in a general direction towards the Salvation Army.

Admittedly, it is difficult to ascertain what is probative and what is not, and the trial court must exercise its discretion cautiously, especially when fundamental rights are in the balance. However, on this record, we can agree that what we have is a conglomeration of innocent facts which do not clearly link the other person who bought gas to the crime; a man bought gas and put it in a *plastic* container, he walked in a direction that even appellant's witness could not see, and he bought gas forty minutes to an hour before the Salvation Army was bombed. We can agree that an additional proffer is needed to warrant receipt of the testimony. The trial court obviously wrestled with the question in an effort to be cautious: [2]

> Now if you have some evidence suggesting that the person—that a person was seen across the street from the Salvation Army with these plastic containers, putting some gasoline in a glass container, shortly before the events took place, then we will be talking about a different situation, but you don't have additional evidence.

Finally, perhaps the most glaring weakness in appellant's claim is that no motive was proffered that would link the man who bought gas to the crime—this is in contrast to the fact that a motive was established with respect to appellant. We conclude that the "trial court did not err in prohibiting [appellant] from admitting the proffered evidence *when such evidence was not closely related to the facts surrounding the crime at issue. Beale v. United States, supra,* 465 A.2d at 803 (emphasis added).

Our conclusion is supported by caselaw in other jurisdictions. In *State v. Giguere,*

184 Conn. 400, 439 A.2d 1040 (1981), the Supreme Court of Connecticut noted that the determination of the relevancy of evidence is within the sound discretion of the trial court: " 'it is within the sound discretion of the trial court to refuse to admit such evidence when it *simply affords a possible ground of possible suspicion against another person.'* " *Id.* at 405, 439 A.2d at 1043 (emphasis added; citation omitted). Similarly, the Court of Appeals of Wisconsin, in *State v. Denny,* 120 Wis. 2d 614, 357 N.W.2d 12 (1984), spoke directly to the paucity of evidence which merely shows the existence of "opportunity" to commit the crime: "general proof of opportunity and criminal disposition raises, at most, a *bare possibility* that a third party might be the culprit.... [T]here must be more than general proof of opportunity and criminal disposition." *Id.* at 622, 357 N.W. 2d at 16 (emphasis added). "[W]here it is shown that a third person not only had the motive and opportunity to commit the crime but also was placed in *such proximity* to the crime as to show he may have been the guilty party, *the evidence would be admissible."* *Id.* at 624, 357 N.W.2d at 17 (emphasis added, citations omitted). The Court of Appeals for the Ninth Circuit noted that "the evidence offered by [appellant] was not so closely connected to the issue of his guilt or innocence that its exclusion, based on its lack of probity and its tendency to confuse the jury, violated due process or the right of compulsory process." *Perry v. Rushen,* 713 F.2d 1447, 1454–55 (9th Cir.1983).

Here we cannot say that the evidence offered by appellant was so clearly connected to the issue of his guilt or innocence that its exclusion raised the spectre of constitutional infirmity. The trial court carefully balanced the probative value versus prejudicial impact and found the proffered testimony to raise no more than speculation. "We will not overturn [this] decision

---

**2.** The trial court noted that appellant's counsel could have attempted to establish a nexus between the Amoco station gas and the substance used in the molotov cocktail through a chemical analysis, but concluded that even this would not

tip the scale in evaluating the probative nature of the proffered testimony. The evidence would establish that the gas came from Amoco, not that someone other than appellant committed the crime.

absent a clear abuse of discretion." *Hall, supra,* 454 A.2d at 320. We find no such abuse on this record.

### III.

■ Appellant further challenges the trial court's conclusion that he was subject to the enhanced sentencing provision of D.C. Code § 22–104a. Specifically appellant contends, for the first time in this court, that the sentencing on his initial felony did not precede commission of his second felony, and as a result, he is not subject to the penalties provided in D.C.Code § 22–104a.[3] It is true that the information filed by the government in the trial court, giving notice of its intent to seek enhancement, recited that appellant had been convicted of harboring a fugitive in Case No. 13649–75 on July 9, 1976 and assault with intent to commit a robbery (occurring on January 14, 1976) in Case No. 25251–76 on July 28, 1976. However, the government represents in this court that an examination of Superior Court files in No. 13649–75 reveals that the initial sentencing (suspending a one-to-five year sentence and imposing conditional probation) was actually July 8, 1975; the July 9, 1976 date was the date of the revocation of probation because of appellant's conviction on the assault charge. Since this court has specifically held that placement on probation is considered an "initial sentence" for the enhancement purposes of D.C.Code § 22–104a, *McDonald v. United States,* 415 A.2d 538, 540–43 (D.C.1980), it would appear that appellant's initial sentencing on July 8, 1975 preceded the commission on January 14, 1976 of the second felony, and that therefore he was in the posture of one subject to enhanced punishment. The question remains, however, whether in view of our repeated admonition that there must be strict compliance with the procedural requirements attendant to statutory provisions which permit enhanced punishment, *see Boswell v. United States,* 511 A.2d 29, 31 (D.C.1986), appellant was improperly sentenced upon a defective notice giving erroneous information as to a sentencing date.

The government argues here that, even if the issue has been preserved, the minor misinformation did not prejudice appellant, and should be considered harmless, (citing *Arnold v. United States,* 443 A.2d 1318, 1328 (D.C.1982)). While it could be argued that misinformation, which on the surface places a defendant outside the purview of the enhancement statute, could hardly be minor to his decision as to whether to attempt to negotiate with the government, we need not pursue the matter here in view of the existence of other misinformation which requires remand. The government advises that examination of Superior Court files also shows that the conviction in Case No. 13649–75 was not for harboring a fugitive, as its information and the court certified computer printouts recited, but rather for a violation of the Bail Reform Act. The government concedes that, because the basic differences in the two offenses conceivably could have resulted in a different sentence, a remand for resentencing may be in order. We agree that the trial court, for enhancement purposes, must have all the correct information before it for sentencing.

We therefore affirm appellant's conviction for malicious destruction of property. However, we remand the case to the Superior Court with instructions to vacate the sentence previously imposed and to impose a sentence in accord with that authorized by law. The sentence may be enhanced pursuant to the provisions of D.C.Code § 22–104a, only after the government in Shepard's presence has introduced evidence proving beyond a reasonable doubt that Shepard has committed the two felonies required for enhancement under that statute. *See Boswell v. United States, supra,* 511 A.2d at 35.

*So ordered.*

---

**3.** The relevant code provision states: "A person shall be considered as having been convicted of 2 felonies if his initial sentencing under a conviction of 1 felony preceded the commission of the 2nd felony for which he was convicted." D.C.Code § 22–104a(b)(2).