Woredell **JOHNSON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 86–47.

District of Columbia Court of Appeals.

Argued March 8, 1988.
Decided Jan. 4, 1989.

Elizabeth G. Taylor, Public Defender Service, with whom James Klein, Public Defender Service, Washington, D.C., was on the brief for appellant.

Michael D. Brittin, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., at the time the brief was filed, and Michael W. Farrell, Elizabeth Trosman, Washington, D.C., and William R. Martin, Asst. U.S. Atty., Dayton, Ohio, were on the brief for appellee.

Before ROGERS,[1] Chief Judge, and NEWMAN and TERRY, Associate Judges.

NEWMAN, Associate Judge:

Johnson was convicted by a jury of armed robbery, felony murder while armed, and obstruction of justice. On appeal, he contends that the trial court erred in excluding cross-examination of and extrinsic evidence about a key government witness which, according to him, would have tended to establish that the witness committed the armed robbery and murder as well as showing the witness' bias and motive to testify falsely. We affirm.[2]

---

1. Judge Rogers was an Associate Judge of this court at the time of argument. Her status changed to Chief Judge on November 1, 1988.

2. Johnson makes two other contentions that we also find meritless. He contends the prosecutor failed to correct known false testimony by one of his witnesses. We find no error. Johnson also contends the trial court erred in its handling of his claim of prosecutorial misconduct about payments to government witnesses for witness conferences. While the conduct of the government in this regard may be subject to

## I.

The government's evidence showed that Johnson, Harrison, Brown, Sothern, Herring and a man known as Youngen spent the evening of January 3, 1985, drinking wine on the front porch of an abandoned house located on Fourth Street, N.W. This house is located near the Second and D Street homeless shelter, where Johnson, Harrison, Sothern and Herring occasionally stayed. The six men eventually went into one of the rooms of the abandoned house. Sothern, Brown and Herring all recounted that once inside the house they continued drinking together. Sothern and Herring also testified that Johnson, Harrison and Youngen were standing together, approximately five to twenty-five feet away from them. Sothern testified that Johnson and Harrison continued an argument (which had begun on the front porch) about whether Harrison owed Johnson ten dollars. He further testified that Youngen yoked Harrison while Johnson went through his pockets. Harrison started to struggle, kicking Johnson in the face. According to Sothern, Johnson then stabbed Harrison twice in the chest with a knife, and Youngen stole his watch. Herring, a good friend of Sothern's, recalled seeing Johnson's hand move twice, but did not notice what, if anything, he had in his hand. Brown, who was a good friend of the decedent, testified that he heard the decedent scream and saw him slump over. Sothern, Herring and Brown immediately ran out of the house. Neither Brown nor Herring contacted the police; Sothern claimed he attempted to contact the police.[3]

Officer Dyson of the Metropolitan Police Department discovered Harrison's body in the Fourth Street house on January 5th. On January 10th, while at Superior Court on an unrelated matter, Officer Dyson saw Sothern (whom he recognized) and asked him if he knew anything about the homicide. Initially hesitant, Sothern gave a statement to the Homicide Branch and identified Johnson from a photo array later that evening.

An autopsy revealed that Harrison died from strangulation, multiple cutting and stabbing wounds, and a loss of blood. The probable murder weapons included knives and broken bottle parts. Analysis of the fingerprints taken from the bottle parts recovered at the scene established that they were not those of Johnson, Sothern, Herring or Brown.

Johnson's probation officer testified that Johnson came to her office without a scheduled appointment on January 8th. He told her that he had heard that a murder had been committed, that the police were showing his photograph around the neighborhood, and that there was a warrant for his arrest. After making some inquiries, she informed Johnson on January 10th that there was no outstanding warrant. The investigating officer testified that Johnson was not a suspect until after the police had spoken to Sothern on January 10th.

In his defense, Johnson testified that at approximately 5:00 p.m., after returning from a job as a laborer (somewhere in Virginia), he had a brief conversation with Sothern, Brown, Herring and the decedent in front of a pawn shop located near an alley leading to the Fourth Street house. After this conversation, he arrived at the shelter at approximately 6:00 p.m., where he stayed the entire evening. On January 5th, after hearing about Harrison's death and recalling seeing Sothern with him, Johnson asked Sothern whether he knew anything about the murder. The following day he heard he was a suspect. He admitted speaking to his probation officer. He also admitted asking Sothern why he was getting him involved; he denied threatening Sothern, knowing Youngen, carrying a knife and killing Harrison.

question, we can find no error in the trial court's resolution of this issue.

3. Sothern claimed that immediately after the murder he called the police; the first time he was placed on hold, and the second time the line was busy. Johnson rebutted this testimony with testimony about the operating procedures for the 911 system of the Metropolitan Police Department.

## II.

### A.

■ The Due Process Clause and the Sixth Amendment afford a criminal defendant the right to confront and cross-examine witnesses against him. *See Davis v. Alaska,* 415 U.S. 308, 315–18, 94 S.Ct. 1105, 1109–11, 39 L.Ed.2d 347 (1974); *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1974); *Stack v. United States,* 519 A.2d 147, 151 (D.C. 1986). The due process clause also affords a criminal defendant the right to call witnesses on his own behalf. *Chambers, supra,* 410 U.S. at 294, 93 S.Ct. at 1045. For these reasons, evidence that someone other than the defendant committed the charged crimes may be presented through the testimony of defense witnesses, *Brown v. United States,* 409 A.2d 1093, 1097 (D.C.1979), and by cross-examination, *Stack, supra,* 519 A.2d at 152.

With respect to the admissibility of exculpatory extrinsic evidence, we have said:

Evidence that someone other than the accused has committed the crime for which the accused is charged may be presented through the testimony of defense witnesses when there are sufficient indicia that the evidence is reliable. *Chambers v. Mississippi, supra,* 410 U.S. at 298–303, 93 S.Ct. 1038 [sic]. . . . "When guilt of another person is inconsistent with the guilt of the defendant, it is always *relevant* for the defendant to present evidence that such other person committed the crime." 1 Wharton's Criminal Evidence § 195 at 404 (13th ed. 1972). However, before evidence of the guilt of another can be deemed relevant and thereby admissible, the evidence must *clearly link* that other person to the commission of the crime. *See e.g., State v. Perelli,* 125 Conn. 321, 5 A.2d 705 (1939); *White v. State,* 52 Nev. 235, 285 P. 503 (1930). Even when such evidence is relevant, the trial court must weigh its probative value against its prejudicial impact, including its propensity to mislead the jury or confuse them, to determine whether to admit the evidence.

*Punch v. United States,* D.C.App. 377 A.2d 1353, 1358 (1977).

*Brown, supra,* 409 A.2d at 1097 (emphasis added); *see Shepard v. United States,* 538 A.2d 1115, 1117 (D.C.1988); *Beale v. United States,* 465 A.2d 796, 803 (D.C.1983), *cert. denied,* 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984).

■ What we mean by "clearly link," as used first by this court in *Brown, supra,* 409 A.2d at 1097, is proof of facts or circumstances which tend to indicate some reasonable possibility that a person other than the defendant committed the charged offense. This proof permits the admission of evidence which otherwise is generally excluded because it is too remote in time and place, completely unrelated or irrelevant to the offense charged, or too speculative with respect to the third party's guilt. *E.g., Stack, supra,* 519 A.2d at 147; *Beale, supra,* 465 A.2d 796; *Brown, supra,* 409 A.2d 1093; *United States v. Thornburg,* 844 F.2d 573, 599 (8th Cir.1988); *United States v. DeNoyer,* 811 F.2d 436, 440 (8th Cir.1987); *see* 29 Am.Jur.2d *Evidence* § 441 (1967) (defendant should not be able "to indulge in conjectural inferences that some other person might have committed the offense").

■ The proffered evidence may, of course, be either circumstantial or direct, and may include, for example, a third party's actions, motives, opportunity, statements and declarations against penal interest. *State v. Hawkins,* 260 N.W.2d 150, 159 (Minn.1977); 1A Wigmore on Evidence §§ 139–141 (Tillers Rev.1983); Wharton, Criminal Evidence § 134 (14th ed. 1979); 29 Am.Jur. 2d *Evidence* § 441 (1967). Such evidence may consist of one fact or circumstance, or a set of facts or circumstances, which, in the aggregate, establishes the necessary link, connection or nexus between the proffered evidence and the crime at issue. *E.g., Stack, supra,* 519 A.2d at 153; *Beale, supra,* 465 A.2d at 803; *State v. LeClair,* 425 A.2d 182, 187 (Me.1981) (evidence must clearly connect third party with charged offense to be admissible) (citing *Commonwealth v. Graziano,* 368 Mass. 325, 331 N.E.2d 808, 811 (1975) ("evi-

dence should not be too remote in time or place or too weak in probative quality, and it should be closely related to the facts of the case against the defendant")); *see also United States v. Morgan*, 189 U.S.App. D.C. 155, 157–59, 581 F.2d 933, 935–37 (1978) (trial court improperly excluded evidence which "suggested that a third person was guilty of crime charged"); *Hawkins, supra,* 260 N.W.2d at 159; *Marrone v. State*, 359 P.2d 969, 984 (Alaska 1961) (proffered evidence must have an "inherent tendency to connect [the third person] with the actual commission of the crime"); *Hines v. Commonwealth*, 136 Va. 728, 117 S.E. 843 (1923) (evidence which tends to closely connect third party with crime at issue is admissible).

■ There is no requirement that the proffered evidence must prove or even raise a strong probability that someone other than the defendant committed the offense. Rather, the evidence need only *tend to* create a reasonable doubt that the defendant committed the offense. In this regard, our focus is on the effect the evidence has upon the defendant's culpability, and *not* the third party's culpability. *Hawkins, supra,* 260 N.W.2d at 158–59 (purpose of evidence is not to "prove the guilt of other person, but to generate reasonable doubt of the guilt of the defendant"); *see Holt v. United States*, 342 F.2d 163, 166 (5th Cir.1965) (defendant did not have to show that some other man was in fact guilty of the prior crimes evidence he wanted to introduce to support his defense of mistaken identity, rather it was "sufficient for [him] to prove that he had been positively and mistakenly identified" before); *State v. Perelli*, 125 Conn. 321, 328, 5 A.2d 705, 705 (1939); *cf.* 1A WIGMORE ON EVIDENCE § 139 (Tillers Rev.1983) (evidence should be submitted if it raises the "slightest likelihood" that someone other than accused committed the crime). *But see People v. Arline*, 13 Cal.App.3d 200, 204–05, 91 Cal.Rptr. 520, 522 (1970) (defendant "should not be required to establish the guilt of a third person with that degree of certainty requisite to sustain a conviction of the latter. On the other hand, *it seems equally clear that evidence which simply affords a possible ground of possible suspicion against another person should be inadmissible*") (quoting *People v. Buono*, 191 Cal.App.2d 203, 228, 12 Cal.Rptr. 604, 618 (1961)).

■ We have also discussed exculpatory evidence in relation to the right of cross-examination. In *Stack, supra,* a case decided subsequent to Johnson's conviction, the issue before us was whether the Sixth Amendment was violated when the trial court limited cross-examination of the victim's boyfriend, Vaughan, about his prior assaults on the victim, Bataineh. Stack argued that the inquiry was crucial to support his defense that Vaughan inflicted the fatal blow and to demonstrate his bias and motive to fabricate. Stack also sought to introduce extrinsic evidence to support his theory. That evidence consisted of the proffered testimony of a witness that she had seen Vaughan beat the decedent during the relevant time period. We stated that the evidence sought to be elicited on cross-examination and by extrinsic evidence had probative value, because "[t]he probative value of the prior assaults testimony went beyond a general suggestion that someone other than Stack could have caused the fatal blow." *Stack, supra* at 153. We intimated that irrespective of whether exculpatory evidence is sought to be introduced by cross-examination or through extrinsic evidence, it should be measured under the same standard of admissibility. *Id.* We now so hold.

### B.

■ The defense theory was that Sothern and Herring implicated appellant because they murdered Harrison. The defense also claimed that Brown testified because he feared Sothern and Herring. To support this theory, Johnson sought a pretrial ruling that he be permitted to cross-examine Sothern about his prior bad acts and to introduce related extrinsic evidence, because such testimony and evidence would reveal, to use his language, "frightenly" similar parallels between the motive(s) for and manner in which the prior bad acts

were committed, and the motive for and manner in which Harrison was killed. Specifically, Johnson sought to establish that: (1) in 1983, Sothern pled guilty to possession of a prohibited weapon (a broken bottle) as a result of his cutting an alcoholic who had refused to share his liquor with him; (2) in May, 1983, he was arrested for using a pocket knife to assault a man who refused to give him money outside a liquor store; (3) in 1982, he pled guilty to assault, and in 1979, he was charged with rape, each stemming from his choking and beating a woman; (4) a staff member of the shelter was prepared to testify that Sothern, Herring and a third man attempted to rob a fellow resident inside the shelter; and (5) he told two defense investigators that he had committed an unrelated homicide several years prior to Harrison's death. The trial court denied the motion.

The trial court did not err by restricting the cross-examination, or by rejecting the proffered extrinsic evidence. The trial court recognized that the issues presented were those posed by our *Brown–Beale* line of cases, and by *Davis v. Alaska, supra,* and its progeny. Indeed, Johnson extensively briefed this matter on both theories in his pretrial motion. We are satisfied from the record that the trial court fully understood Johnson's contention and the court's proper role pertaining thereto. The evidence was not admissible. As Johnson sought to use the evidence, for it to be relevant, it must show a linkage between Sothern and the crime charged, and thereby tend to create a reasonable doubt that Johnson killed Harrison. *Stack, supra; see also* FED.R.EVID. 401. Likewise, the probative value of the evidence must outweigh any tendency to create undue prejudice. *Stack, supra; see also* FED.R.EVID. 403.

Whether or not Sothern was the perpetrator was indeed a material issue to the defense. However, Sothern's prior bad acts do not tend to establish this proposition. Unlike *Stack*, where the defense proffer of an unexplained injury made Vaughn's prior assaults on the victim relevant to the issue of how the victim died, Johnson has failed to proffer any evidence which would tend to make Sothern's prior bad acts come close to this level. In essence, what Johnson sought to present to the jury was evidence that Sothern had committed other crimes, and had an opportunity to commit this one. Given this evidence, Johnson contends, Sothern had a motive to falsely inculpate him as the killer. While it is entirely likely that a factual situation could exist showing other crimes and opportunity which would meet the appropriate test of relevance when offered by a defendant to exculpate himself, the evidence here falls far short.

For the same reason, we reject Johnson's argument that he was improperly precluded from demonstrating Sothern's bias, i.e., to inculpate Johnson in order to cast suspicion away from himself. "[T]he opportunity ... to explore a witness' bias is circumscribed by the rule of relevance...." *Gibson v. United States,* 536 A.2d 78, 82 (D.C. 1987); *see Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) ("trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, ... interrogation that is ... only marginally relevant"); *Washington v. United States,* 499 A.2d 95, 100 (D.C.1985). Although we are sensitive to Johnson's right to a fair trial, nevertheless, he had "no constitutional right to present irrelevant evidence." *Gibson, supra,* 536 A.2d at 82.

AFFIRMED.