**Leonard L. WATSON, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 89–CF–457.**

District of Columbia Court of Appeals.

Argued April 14, 1992.
Decided June 12, 1992.

---

Paul J. Riley, Washington, D.C., appointed by this court, for appellant.

Thomas R. Eldridge, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, and TERRY and SULLIVAN, Associate Judges.

ROGERS, Chief Judge.

Appellant Leonard Watson appeals on the ground that his due process and Sixth Amendment rights to present a defense and cross-examine witnesses were violated when the trial judge refused to let him present evidence to indicate a reasonable probability that someone else committed the crimes with which appellant was

charged.[1] He also contends that the trial judge used the wrong standard in excluding his proffered "exculpatory extrinsic" evidence. We affirm.

I

On October 8, 1987, at nine o'clock in the evening, Detective Gatewood and Detective Bacon were working undercover, as part of Operation Clean Sweep, in the 2700 block of Langston Place, Southeast. Detective Gatewood drove into a parking lot, and upon seeing appellant asked if he had any "Boat."[2] Appellant answered how many and the officer responded two. Thereafter, appellant handed the officer two tinfoils containing a greenish weed with a strong chemical odor, in return for twenty dollars in prerecorded funds. Officer Bacon then broadcast a lookout for appellant, describing him as wearing a gray hooded sweatsuit and tennis shoes. The arresting officer, Officer Fulton, testified that the lookout included a description of appellant as a light-complected black man.[3]

In response to the broadcast, Officer Fulton drove into a parking lot off of Langston Place and saw a man who matched the lookout description, standing on the stairs of 2732 Langston Place. As Officer Fulton approached appellant, he saw appellant attempt to pass an object to a woman, Barbara Payne. Officer Fulton heard Ms. Payne tell appellant: "Don't give me that, I don't want it." He also saw appellant drop money and a tinfoil object to the ground.[4] Officer Fulton then took appellant to the corner of Alabama Avenue and Irving Street where Detective Gatewood and Detective Bacon positively identified appellant as the man who had sold them the drugs.[5] Seventeen minutes elapsed between the time Detective Gatewood left the parking lot and the time he identified appellant as the seller at the showup.

Barbara Payne testified that she and a girlfriend were standing on the front steps of an apartment building for approximately an hour or so when appellant walked up to them to talk. Appellant was there for approximately five minutes when she felt him put something in her pocket. She immediately took the object out of her pocket and told appellant not to put anything in her pocket. The police arrived about a second later.[6] Ms. Payne also testified that she did not see appellant sell any drugs while he was in her presence.

Appellant's defense was mistaken identity. He testified that on the evening of his arrest, he had left home approximately 25 minutes before his arrest to cash a check.[7]

1. Appellant was charged and convicted of distribution of phencyclidine (PCP), distribution of marijuana, possession with intent to distribute PCP, and possession with intent to distribute marijuana. D.C.Code § 33–541(a)(1) (1988 Repl.).

2. "Boat" is the street name for PCP.

3. The buy card filled out by the officers after the sale, but before the show up, indicated that the seller was a light-complected black man, wearing a gray hooded sweatsuit and white tennis shoes.

4. The serial number of the dropped money was the same as the serial number of the pre-recorded funds used by Detectives Gatewood and Bacon.

5. Detective Charles DiDomenico testified as an expert in the packaging, use and distribution of narcotics, and in the techniques and methods used by persons involved in narcotics to attempt to avoid capture or detection. He testified that the two tinfoils sold to Detective Gatewood and the tinfoil discarded by appellant contained usable amounts of marijuana and PCP, but that the amounts of marijuana and PCP contained in the packages sold to the undercover officer differed from the amounts of marijuana and PCP found in the package seized from appellant. The packages sold to Detective Gatewood, combined, consisted of 1270 milligrams of plant material containing 2.4% PCP, while the package seized from appellant at the time of his arrest consisted of 720 milligrams of plant material containing 1.6% PCP on marijuana. Detective DiDomenico further testified that the possession of a single tinfoil would be consistent with possession with intent to distribute where the individual had sold two tinfoils previously, and that drug dealers who believe that they are about to be caught by the police will pass the drugs off to other people to avoid capture.

6. Ms. Payne was impeached with her prior sales and use of illicit drugs.

7. Appellant's mother testified that on the night appellant was arrested he had told her he was going to cash a check that he had received from the Armstrong Vocational Training Program; his pay was about $35 a week.

He cashed his check, and on the way home stopped to talk to two women. While he was talking with them, a juvenile named P.R. came up and asked him if he had change for a twenty dollar bill. Appellant gave P.R. two fives and a ten in exchange for the twenty-dollar bill. A few seconds afterwards, the police arrived and arrested him (appellant). Appellant described P.R. as being in his same "age category," with similar skin color, height, and build as appellant, and wearing a gray sweat suit.[8] He also testified that he saw the police arrest P.R. that evening.

Carlton Addison, a friend of appellant's, testified that he saw appellant stop and talk to P.R. for a few seconds, but could not hear what they were saying nor see what, if anything, was in their hands. Mr. Addison saw the police grab and arrest appellant and P.R. He described P.R. as about the same height (5'8" or 5'9") as appellant, approximately 18 years old, with light brown skin.

In rebuttal, the government introduced into evidence a photograph of P.R. taken on October 8, 1987, the date of his arrest. The judge sustained an objection to a defense question regarding the nature of the charges against P.R.

## II

■ The due process clause and the Sixth Amendment afford a defendant the right to confront and cross-examine witnesses against him. (*Woredell*) *Johnson v. United States*, 552 A.2d 513, 516 (D.C. 1989). They also afford a defendant the right to call witnesses on his own behalf and to establish a defense. *Id.; Taylor v. Illinois*, 484 U.S. 400, 409, 108 S.Ct. 646, 653, 98 L.Ed.2d 798 (1988). Accordingly, a defendant may present evidence through the testimony of defense witnesses and by cross-examination of prosecution witnesses that would tend to show that someone other than the defendant committed the crimes charged. *Id.; Stack v. United States*, 519 A.2d 147, 152 (D.C.1986); *Beale*

*v. United States*, 465 A.2d 796, 803 (D.C. 1983); *Brown v. United States*, 409 A.2d 1093, 1097 (D.C.1979). Before evidence that there is a reasonable probability that someone else committed the charged offense can be deemed relevant, and thereby admissible, the evidence must "clearly link" the other person to the commission of the crime. *Johnson, supra*, 552 A.2d at 516.

> What we mean by 'clearly link' ... is proof of facts or circumstances which tend to indicate some reasonable possibility that a person other than the defendant committed the charged offense. This proof permits the admission of evidence which otherwise is generally excluded because it is too remote in time and place, completely unrelated or irrelevant to the offense charged, or too speculative with respect to the third party's guilt.

*Id.* In *Johnson, supra*, we further articulated that

> [t]here is no requirement that the proffered evidence must prove or even raise a strong probability that someone other than the defendant committed the offense. Rather, the evidence need only *tend to* create a reasonable doubt that the defendant committed the offense. In this regard our focus is on the effect the evidence has upon the defendant's culpability and *not* the third party's culpability.

*Id.* at 517 (citations omitted) (emphasis in original).

■ "Even when such evidence is relevant, the trial court must weigh its probative value against its prejudicial impact, including its propensity to mislead the jury or confuse them [sic], to determine whether to admit the evidence." *Id.* at 516; *see also Shepard v. United States*, 538 A.2d 1115, 1117 (D.C.1988). There must also be "sufficient indicia that the evidence is reliable." *Johnson, supra*, 552 A.2d at 516. A trial judge's determination that the proffered evidence is not sufficiently probative

8. Appellant said he was twenty one years old, and that he was unsure if P.R. was older or younger than eighteen years old.

or too prejudicial is reviewable for abuse of discretion. *Shepard, supra,* 538 A.2d at 1116; *Beale, supra,* 465 A.2d at 803.

At trial defense counsel proffered to the trial judge that a juvenile named "P.R.," who had similar physical characteristics to appellant, had been arrested in the same area and at approximately the same time as appellant,[9] and that appellant would testify that he had seen P.R. "approaching" people that night shortly before appellant's own arrest. Defense counsel also proffered Police Department Form 202A, taken from P.R.'s juvenile file, as evidence that someone else had committed the charged crimes. The form described the arrest of P.R. for possession with intent to distribute PCP at 9:10 p.m. in the 2700 block of Langston Place, the same time and place that appellant was arrested. The form also stated that P.R. was wearing a sweatshirt at the time of his arrest, and that P.R. was arrested with a great deal of money and PCP in his possession. In addition, defense counsel asked the trial judge to take judicial notice of the fact that the trial court's lockup records for October 9, 1987, indicated that P.R. was processed through Superior Court on that date, thereby showing that he had been arrested the night before. The trial judge denied these defense requests as more prejudicial to the government than probative of the defendant's defense theory, and too speculative.[10]

Appellant contends that the trial judge erred in excluding the lockup records and Form 202A from introduction into evidence by determining their admissibility on the basis of weighing the prejudice to the government's right to a fair trial, i.e., avoiding speculation by the jury, rather than on whether the proffer tended to create a reasonable doubt that appellant committed the offense under *Johnson, supra,* 552 A.2d at 516–17. He further contends that the proffered evidence about P.R. approaching people on the street in an area known for drug sales would have been admissible by analogy to the "surrounding circumstances" test of *Toliver v. United States,* 468 A.2d 958, 960 (D.C.1983). Finally, he contends that the judge erred in denying cross-examination regarding the charges against P.R. when he was arrested. Contrary to appellant's contention, we find no indication that the trial judge applied an incorrect legal standard in reviewing the admissibility of the proffered evidence. We address each of the proffers.

A

██ First, defense counsel proffered that appellant would testify that he had seen P.R. "approaching" people on the street.[11] The trial judge ruled that in the absence of any evidence of transfer or sighting of money or tinfoils, the proffered testimony was inadmissible because it did not "clearly link" P.R. to the commission of the crimes for which appellant was arrested. Viewed in isolation, as the trial judge found, this is not enough to clearly link P.R. with the charged crimes. Without evidence of a transfer of drugs or money, or other conduct suggesting involvement in a drug sale, appellant's testimony that he saw P.R. "approaching" people does not "clearly link" P.R. to the commission of the

9. During trial, after defense counsel had been unsuccessful in obtaining a copy of PR's juvenile record, *see* D.C.Code § 16–2332 (1989 Repl.), the trial judge examined the record and advised defense counsel that PR had been "arrested for a transaction occurring on 10-8-87 at 2110 hours, ten minutes after nine in the 2700 block of Langston Place."

10. The trial judge stated:
[t]hat the prejudice to the Government to a fair trial would be compromised and it will be too much speculation and inference at this point to allow the juvenile report form to come in as evidence to be considered by the jury or for the Court to take judicial notice.

Furthermore, in regard to both the Form 202A and the lockup records, the judge found that:
in view of the fact that the Court has already permitted testimony about [PR's] existence and the fact that he was arrested, which at this point would be supported by the defendant's testimony, . . . for that reason the Court feels that the police report as well as the judicial notice issue would be more prejudicial than probative at this point.

11. The defense also proffered that appellant had seen P.R. sell PCP on other occasions.

crime charged. Merely placing someone similar in dress and physical size to appellant close to appellant at the time of the charged crimes, as the trial judge observed, is "innocuous, innocent type activity ... inviting the jury to engage in wild speculation." *See Johnson, supra,* 552 A.2d at 516.

### B

■ Second, defense counsel proffered, and asked the judge to take judicial notice of, the lockup records for October 9, 1987, in order to show that P.R. was processed through the trial court on that date, thereby establishing that P.R. had been arrested on October 8, 1987. The trial judge found that the records were unreliable, noting that "[w]e found many instances of factual mistakes and matter of fact statements are used and they're a little sloppy in preparing them."

Even if lockup records may be unreliable on occasion, it is difficult to understand the judge's basis for altogether discarding the lockup records with regard to the identity of the person and the date he was processed in the trial court. The government did not object to admission on the ground of unreliability as to these assertions; indeed, its rebuttal witness confirmed the accuracy of the lockup records as to the person and the date of arrest. Nonetheless, because the date of P.R.'s arrest was before the jury as a result of the government's rebuttal evidence, the defense's reason for admission of the lockup records was accomplished, and admission of the records would have been cumulative. Hence, any error in refusal to admit the records into evidence was harmless. *See Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946).

### C

■ Third, defense counsel sought admission of PD Form 202A in order to show the circumstances surrounding P.R.'s arrest.[12] Defense counsel relied on *United States v. Smith,* 172 U.S.App.D.C. 297, 305, 521 F.2d 957, 965 (1975), where the court held that a police form and broadcast transcript were admissible in a criminal proceeding as business records, either as substantive evidence or for impeachment purposes, when the record meets the test of trustworthiness and is offered by a criminal defendant to support his defense. The trial judge found that the Form 202A established only that P.R. was arrested for drug charges on the same evening as appellant, and that the necessary link was not present because "frequently there may be two or three drug dealers in the same area in the same street and selling drugs at the same time.... So it appears to this Court it is not that unique or rare that you may have two or three individuals arrested in the same block operating independently." The judge also inquired of defense counsel how the evidence was exculpatory "especially if, in fact, [P.R.] doesn't look anything like your client?"

The trial judge never made an explicit ruling under *Smith, supra,* nor explicitly found that Form 202A was reliable evidence, but instead went directly to the question of its probative value compared to its prejudicial effect, focusing on the possibility of jury speculation and potential prejudice to the government. In so doing, however, the judge appeared to rely on his own determination of an issue that, in light of appellant's defense of mistaken identity, was for the jury to decide, namely, whether appellant's acts took place apart from those of P.R. or whether the police mistook appellant for P.R. The judge observed that it was not unusual for more than one person to be selling drugs in an area. But there was evidence that appellant and P.R. had been engaged in an encounter at the relevant time and place before appellant's arrest. To this extent, it is difficult to reconcile the judge's ruling that Form 202A was inadmissible with "the admission of evidence," sanctioned by *Johnson, supra,* 552

12. The similarity of dress that appellant and P.R. were wearing on the night of their arrest was in evidence as a result of the photographs offered into evidence during the government's rebuttal case. Therefore, this evidence in Form 202A would have been cumulative, and we need not address appellant's claim of error in this regard.

A.2d at 516, "which otherwise is generally excluded because it is too remote in time and place, completely unrelated or irrelevant to the offense charged, or too speculative with respect to the third party's guilt." *Id.*

The defense proffered evidence of P.R.'s presence at the scene at the time of the crime, his "approaching" activity [13] and his encounter with appellant, and his arrest for possessing illegal drugs with the intent to distribute them. The government's evidence, in turn, showed that the broadcast description of the seller was limited in scope and that the detective's contact with the seller was also limited,[14] and, further, that there was a seventeen-minute gap between the sale and the show-up identification. Viewing the evidence as a whole, the trial judge would have to "take a hard look" before ruling that the defense proffer would not have tended to show, by a reasonable possibility, that P.R. was involved in the same unlawful activities for which appellant was charged. *See Collins v. United States*, 596 A.2d 489, 494 (D.C. 1991).

Furthermore, once the government put on its rebuttal case, the grounds for not admitting Form 202A into evidence were more tenuous.[15] *See Collins, supra,* 596 A.2d at 495. Form 202A was not cumulative evidence since the judge had precluded defense counsel from cross-examining the government's rebuttal witness about the crimes for which P.R. had been arrested after the witness testified that P.R. had been arrested on the same night. There was no other evidence that P.R. had a lot of money and PCP in his possession when he was arrested.

So viewed, the judge's ruling that Form 202A was inadmissible prevented appellant from being able to show that P.R. was "clearly linked" to the same activities for which appellant was standing trial. We, nevertheless, find any error harmless for two reasons.[16]

First, Form 202A would only have shown that P.R. was arrested for drug charges on the same evening as appellant. There was ample evidence before the jury of appellant's mistaken identity theory. Appellant was able to introduce, through his own testimony and the testimony of a witness, that P.R. was approximately the same age, height and build as appellant; that P.R. and appellant were both wearing sweatsuits on the evening of appellant's arrest; that P.R. was arrested in the same area and on the same evening as appellant; and that P.R. and appellant had engaged in some type of transaction that evening before appellant's arrest.[17] From this evidence there was a basis for the jury to conclude that appellant's acts did not take

---

**13.** For purposes of this appeal, we assume that had other defense proffered evidence been admitted into evidence, the evidence that P.R. was seen "approaching" other people, would no longer appear innocuous. *Cf. Toliver, supra,* 468 A.2d at 961.

**14.** The transaction lasted less than one minute.

**15.** Defense counsel had argued to the trial judge that once the government introduced evidence in rebuttal the date of P.R.'s arrest, the basis for the trial judge's ruling that the lockup records were inadmissible because unreliable to show the date of arrest no longer existed. Counsel suggested, therefore, that the defense should have been allowed to inquire about the nature of the charges against P.R.

**16.** For these reasons we also conclude that any error by the trial judge in refusing to let defense counsel cross-examine the government's rebuttal witness regarding the reason for P.R.'s arrest was harmless. *See Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). As presented, this claim of error is intertwined with appellant's claim that the trial judge erred in ruling inadmissible the proffered evidence indicating the reason for P.R.'s arrest.

**17.** The government, with reference to Form 202A, points out that:

appellant was able to introduce, through the testimony of witnesses, the following: that [P.R.] was approximately the same age, height and build as appellant ...; that [P.R.] and appellant were both wearing sweatsuits [sic] that evening ...; that [P.R.] was arrested on the same evening as appellant ...; that [P.R.] was in the same area as appellant at the approximate time of appellant's arrest and the time of the transaction with Detective Gatewood ...; and that appellant and [P.R.] had some kind of interaction that evening.... Appellant also argued to the jury that this was a case of mistaken identity. Form 202A would only have reiterated what was already presented to the jury: that [P.R.] was arrested on the same evening as appellant.

place apart from those of P.R., and that the police mistook appellant for P.R. The jury was also aware that the percentage of PCP in the tinfoils sold to Detective Gatewood differed from the percentage of PCP in the tinfoil recovered at the time of appellant's arrest. *See* note 5, *supra.*

Second, the jury had photographs of P.R. and appellant on the night of their arrests. While appellant was prevented from presenting evidence that P.R. had also been arrested the same evening for possession of PCP with intent to distribute, and that P.R. had a lot of money and PCP at the time of his arrest, he sought admission of this evidence to strengthen his defense of mistaken identity. Consequently, because, as the trial judge observed, and the photographic exhibits confirm, P.R. did not look anything like appellant, the evidence that appellant sought to introduce through Form 202A would not have indicated "some reasonable possibility" of mistaken identity. *Johnson, supra,* 552 A.2d at 516; *cf. Smith v. United States,* 389 A.2d 1356, 1359–60 (D.C.1978). P.R. also was not dressed in the manner described in Officer Bacon's broadcast, or in the officers' buy card; P.R. was wearing black, not white shoes, and his sweat suit was not light gray and did not have a hood. This weakness in appellant's mistaken identity defense was highlighted during closing arguments, along with the incriminating evidence of Barbara Payne.[18]

Under these circumstances we can say with fair assurance that the visual examination of Form 202A by the jury would not have affected its verdict. *See Kotteakos, supra,* 328 U.S. at 764–65, 66 S.Ct. at 1247–48. Accordingly, we affirm the judgment.

---

18. During closing argument defense counsel pointed out that the case came down to a swearing contest, and that to convict the jury would have "to do it solely on the government's say so and in spite of all the evidence of the possibility of a mistake." Counsel also pointed out that Detective Gatewood had said that there was only one person in the area dressed like appellant, so he could not be mistaken, when, according to defense counsel, the government's evidence showed that there were at least two. In rebuttal closing argument, the prosecutor pointed out that the photograph of P.R. taken on the night he was arrested showed a person who was wearing a sweatsuit, but not a light gray sweatsuit like appellant was wearing, and that P.R. was not light complected while appellant was. Furthermore, the prosecutor emphasized Ms. Payne's testimony.