**Charles O. BROOKS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 83–1519.**

District of Columbia Court of Appeals.

Argued Feb. 21, 1986.
Decided Oct. 24, 1986.

---

Michael R. Murphey, Washington, D.C., appointed by this court, for appellant.

Lynn Lincoln Sarko, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before PRYOR, Chief Judge, and FERREN and BELSON, Associate Judges.

BELSON, Associate Judge:

Appellant Charles O. Brooks was convicted of three counts of assault with a dangerous weapon, D.C.Code § 22–502 (1981) and one count of carrying a pistol without a license, *id.* § 22–3204. On appeal, he asserts that his convictions must be reversed because the trial court improperly curtailed cross-examination of one of the complainants, and abused its discretion in holding that a portion of a grand jury transcript was not *Brady*[1] material. We are satisfied that the curtailment of cross-examination, although erroneous, was harmless beyond a reasonable doubt and that, had the portion of the grand jury transcript been disclosed, the result at trial would have been the same. We therefore affirm.

On March 26, 1982, Richard Childs and Anthony Riddick, co-workers at a plant in Virginia, met to spend time together before leaving for work. While they were waiting at a neighborhood barber shop, they were joined by Herman Washington. Washington suggested that they accompany him to Charles Brooks' house, where Washington was to pick up a young woman. Childs and Riddick agreed.

---

1. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

When the three reached Brooks' home, Childs and Riddick sat on the steps. Washington went inside and then he and Brooks went outside the building. They argued for a considerable time about the woman in Brooks' apartment. Finally, Childs told Washington that he was tired of waiting, that it was time to leave for work. Brooks yelled at Childs, telling him to mind his own business. Brooks then grabbed Childs and the two scuffled. Washington and Riddick broke up the fight. Although no one was hurt, Childs lost his shirt and jacket.

Childs went home to get another shirt, and caught up with Riddick and Washington as they were walking through an alley to catch a bus to work.

Childs, Riddick and Washington testified that as they were walking through the alley, they saw Brooks at the other end and heard him call Childs' name. As they walked toward Brooks, Brooks moved towards them. When Brooks was approximately six feet from the three, Childs, thinking that Brooks wanted to continue their fight, raised his hands to defend himself. Brooks reached into his pocket, and pulled out a gun. Childs turned and ran. Brooks started to fire. One of the shots struck Childs in the back. Brooks then pointed the gun at Riddick and Washington and pulled the trigger, but the gun just clicked. Brooks turned and fled, with Riddick in pursuit.

Riddick testified that during the chase, Brooks turned, pointed the gun at him, and squeezed the trigger, but again the gun just clicked. Aaron Washington and Annette Washington, Herman Washington's brother and sister, corroborated that part of Riddick's testimony.

Brooks did not testify. After his arrest, however, he had given a statement outlining his version of the event. According to Brooks, he had been walking down the street when he saw Childs and two other men. After he had crossed the street to where the three were standing, Childs suddenly pulled a gun and pointed it at him.

As Brooks smacked the gun away, it discharged. He then ran from the scene, unaware that Childs had been shot. Brooks' statement was introduced into evidence.

The jury found Brooks guilty of three counts of assault with a dangerous weapon, one count against each of the complaining witnesses, as well as one count of carrying a pistol without a license. This appeal followed.

We first examine the question whether there is reversible error in the trial court's decision prohibiting Brooks from impeaching Riddick by bringing out Riddick's status as a juvenile probationer. Before trial, the prosecutor informed the court and defense counsel that Riddick had been convicted as a juvenile for possession of a BB gun, and was on juvenile probation for that offense at the time of this offense and when he testified before the grand jury. Riddick was released from probation sometime after his grand jury appearance. After hearing argument by counsel, the trial court concluded that Riddick's interest in the confidentiality of juvenile records outweighed Brooks' right under the Confrontation Clause of the Sixth Amendment to cross-examine Riddick by reference to his juvenile probationary status, and prohibited Brooks from doing so.

The government concedes that the trial court erred, notwithstanding the state's policy of protecting the confidentiality of juvenile records. In *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Supreme Court ruled that the state's interest in protecting the confidentiality of a juvenile offender's record cannot require yielding so vital a right as that of effective cross-examination for bias of an adverse witness. *Id.* at 320, 94 S.Ct. at 1112. The Court noted that the defense should have been permitted to probe into the possibility that a juvenile witness might testify favorably to the government because he was in the vulnerable status of probationer, both at the time he gave the police a statement regarding the events in

question and at trial. *Id.* at 317–19, 94 S.Ct. at 1110–11. For the same reason, appellant was entitled here to inquire into Riddick's probationary status at the time of both the offense and his grand jury testimony.

There remains the question whether the court's error requires us to reverse Brooks' convictions.

■ In *Delaware v. Van Arsdall,* —— U.S. ——, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the Supreme Court held that a constitutionally impermissible denial of a defendant's opportunity to impeach a witness for bias is subject to the harmless beyond a reasonable doubt standard set out in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Although we have previously held that unconstitutional *in limine* curtailment of a requested line of bias cross-examination is *per se* reversible error, *Tabron v. United States,* 444 A.2d 942, 944 (D.C.1982); *Springer v. United States,* 388 A.2d 846, 856 (D.C. 1978), we modify our standard in light of the Supreme Court's intervening decision. Henceforth, we will evaluate erroneous *in limine* curtailment of a requested line of bias cross-examination under *Chapman's* harmless beyond a reasonable doubt standard.

■ We have no hesitancy holding that with regard to Brooks' convictions for assaulting Childs, Riddick and Washington in the alley, the trial court's error in refusing to allow Brooks to impeach Riddick with Riddick's prior juvenile status was harmless beyond a reasonable doubt. The evidence of appellant's guilt was compelling. Both Childs and Washington testified that Brooks pulled a gun and shot at Childs, Riddick and Washington. Moreover, an expert in firearms testified that no gunpowder residue was found on Childs' clothes. The absence of residue on Childs' clothes negates Brooks' version that the gun discharged when he smacked it away from Childs.

The evidence that appellant assaulted Riddick during the subsequent chase is not so compelling. We need not consider, however, whether the constitutional error was harmless with respect to Brooks' assault on Riddick during the ensuing chase; the manner in which the trial court presented the case to the jury obviates the issue.

In the indictment filed against Brooks, he was not charged with assaulting Riddick twice, once in the alley and once during the chase. Rather, Brooks was charged with a single count of assault upon Riddick. Therefore, if the jury properly found him guilty of assaulting Riddick in the alley, his conviction for assault must stand.

The trial court provided the jury with a verdict form which broke the count of assault against Riddick into two questions, whether Brooks assaulted Riddick in the alley, and whether Brooks assaulted Riddick during the chase. By doing so, the trial court assured that any verdict of guilt would be unanimous. *Compare Hack v. United States,* 445 A.2d 634, 641 (D.C. 1982) (court erred in not instructing jury that it must consider defendant's guilt with regard to each instance of possession of controlled substance). The jury unanimously found Brooks guilty of assaulting Riddick both in the alley and during the chase. Therefore, even if we were unable to hold that the trial court's limitation on impeachment by use of Riddick's juvenile record was harmless beyond a reasonable doubt with respect to the assault during the chase, we would reject Brooks' contentions that his conviction for assaulting Riddick must be reversed, for that conviction is adequately grounded in the jury's verdict regarding the assault in the alley.

We turn then to a discussion of whether Brooks' convictions should be reversed because the prosecutor failed to turn over allegedly exculpatory material to the defense.

In a pre-trial motion, Brooks moved that the prosecutor be ordered to disclose the grand jury testimony of one Raymond Mercer in which Mercer had stated that Her-

man Washington had been involved in an armed robbery in the same alley two years earlier. The prosecutor submitted the transcript to the trial court for an *in camera* inspection. The trial court ruled that, within the context of this case, the transcript contained no *Brady* material, and thus the government was not required to release it. Brooks contends that the trial court abused its discretion in denying his request to review the grand jury transcript.

In *Brady v. Maryland,* the Supreme Court held that, upon request, the prosecution must disclose evidence in its possession favorable to the accused when that evidence is material to guilt or punishment. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). The Supreme Court in *United States v. Bagley,* — U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), stated that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at ——, 105 S.Ct. at 3384.

■ Using the *Bagley* formulation, we are satisfied that even if the grand jury testimony had been disclosed, the result would have been the same. First, the evidence clearly shows that Brooks assaulted Childs, Riddick, and Washington in the alley. Second, Mercer's testimony does not really substantiate Brooks' version of the events. At most, it shows that Brooks may have had a reasonable basis for believing that Washington was a violent and aggressive person.[2] Yet, Brooks' version was that Childs, not Washington, drew a gun on him. It is true that one could argue that evidence of Childs' association with a person known to have committed an armed robbery in the alley would have lent some credence to Brooks' version of events, but

the evidence regarding the former assault would add only tangentially to Brooks' version of the affray. As there is no reasonable probability that, had the evidence been disclosed, it would have affected the outcome of the trial, we discern no reversible error in the trial court's decision not to disclose the grand jury transcript.

*Affirmed.*

---

**2.** The government also argues that Mercer's grand jury testimony would not have been admissible had it been revealed to the defense. After giving that testimony, Mercer recanted it, and later was killed. Thus, he was unavailable for cross-examination. The government argues that because Mercer recanted his testimony, it

lacked adequate indicia of reliability. *See Johns v. United States,* 434 A.2d 463, 473 (D.C.1981) (touchstone for admissibility of hearsay evidence is whether other indicia of reliability make up for absence of live testimony). We need not resolve the question of its admissibility.